IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| BRANDY AZURE,<br><br>    Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA, JARED STANDING, JOHN COOK, ROOSEVELT COUNTY, and DOES 1-10.<br><br>    Defendants.<br><br>ROOSEVELT COUNTY,<br><br>    Cross-Claim Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Cross-Claim Defendant. | CV-21-112-GF-BMM<br><br>ORDER |

## INTRODUCTION

Defendant United States of America ("the Government") has filed a Motion to Dismiss Plaintiff Brandy Azure's ("Azure") Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Doc. 24). The Government contends that Azure cannot maintain claims under the Federal Tort Claims Act

("FTCA"). Azure opposes the Motion. The Court held a hearing on the matter on March 10, 2022. For the following reasons, the Court GRANTS, in part, and DENIES, in part, the Motion.

## BACKGROUND

Azure arrived at her mother's home in Poplar on July 12, 2019, after a night at a bar. (Doc. 20 at ¶ 12). Upon discovering that her daughter and granddaughter were not at the home, Azure located them at an alleged "meth house." *Id.* at ¶¶ 13, 14. The police were called when Azure arrived at the "meth house," and Azure was arrested by Deputy Jared Standing ("Standing"). *Id.* at ¶ 14. The officers transported Azure to the Fort Peck Tribal Detention Center. *Id.*

Azure repeatedly refused Correctional Officer John Cook's ("Cook") requests to remove her clothing and wear an orange jumpsuit during her entry processing at the jail. *Id.* at ¶ 15, 16, 20, 21. The officers led Azure to a holding cell where she was placed face-down and handcuffed. *Id.* at ¶¶ 18, 22. Cook removed Azure's clothing and Azure remained laying on the floor. *Id.* at ¶¶ 23, 25, 26. Tribal authorities dropped the charges against Azure several days later. *Id.* at ¶ 29. Azure filed a complaint with the Bureau of Indian Affairs ("BIA") and an investigation led to the recommendation for disciplinary action against Cook. *Id.* at ¶¶ 30-31.

Azure filed her initial Complaint (Doc. 1) on November 8, 2021, against the Government, Standing, and Roosevelt County. Standing and Roosevelt County each filed crossclaims against the Government in their Answers to the Complaint (Doc. 1). (Docs. 10, 11). The Government filed its first motion to dismiss Azure's claims the next day. (Doc. 12). Azure has since filed a First Amended Complaint and a Second Amended Complaint. (Docs. 17, 20). Azure's Second Amended Complaint includes Defendants Cook and Does 1-10. (Docs. 20). Standing and Roosevelt County have reasserted crossclaims against the Government in their answers to Azure's Second Amended Complaint (Doc. 20). (Docs. 22, 23). The Government similarly has renewed its Motion to Dismiss for claims raised in the Second Amended Complaint (Doc. 20). (Doc. 24).

Azure alleges the following claims in her Second Amended Complaint (Doc. 20): individual liability under 42 U.S.C. § 1983 (Count 1); entity liability under 42 U.S.C. § 1983 (Count 2); Montana Constitutional violations (Count 3); negligence (Count 4); assault and battery (Count 5); and infliction of emotional distress (Count 6).

## LEGAL STANDARD

**Dismissal for Lack of Jurisdiction**

Rule 12(b)(1) allows a court to dismiss a complaint for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A court may look to extrinsic evidence

outside the pleadings when evaluating whether to dismiss a complaint for lack of subject matter jurisdiction. *Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 778 (9th Cir. 2000). The burden of proving jurisdiction rests on the party asserting it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

**Dismissal for Failure to State a Claim**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint under the plausibility pleading standard of Rule 8(a)(2). *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal proves appropriate under Rule 12(b)(6) where the complaint fails to state a claim upon which relief can be granted. *Mendiondo v. Centinela Hospital Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A court may dismiss a complaint "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

The complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face to survive a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009). A claim remains plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 678. The plausibility standard does not require probability, but "asks for more than sheer possibility that defendant has acted unlawfully." *Id*

## ANALYSIS

### I. Claims under 42 U.S.C. § 1983 and the Montana Constitution (Counts 1-3)

The Government argues that Azure's claims under 42 U.S.C. § 1983 and the Montana Constitution do not apply to the United States. (Doc. 25 at 5-6). Azure agrees. (Doc. 29 at 2). The Court dismisses Azure's claims against the Government under § 1983 and the Montana Constitution in Counts 1-3 pursuant to Rule 12(b)(6).

### II. Claims for negligence (Count 4), assault and battery (Count 5), and emotional distress (Count 6)

The Government argues that Azure's remaining claims under the Federal Tort Claims Act should be dismissed. (Doc. 25 at 7-13). The Government waives its sovereign immunity under the Federal Tort Claims Act. The Government remains liable for tort claims "in the same manner and to the same extent as a private individual." 28 U.S.C. § 2674. An exception to this waiver of sovereign immunity exists, however, for intentional torts. No such waiver of sovereign immunity applies, and the Government stands immune, to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, [or] abuse of process." 28 U.S.C. § 2680(h). A court lacks subject matter jurisdiction

5

where an exception in § 2680(h) applies as the Government has not waived sovereign immunity. *Esquivel v. U.S.*, 21 F.4th 565, 573 (9th Cir. 2021).

Azure's claims for negligent training, supervision, and discipline in Count 4 do not qualify as claims "arising out of" an intentional tort. 28 U.S.C. § 2680(h); *Senger v. U.S.*, 103 F.3d 1437, 1440–42 (9th Cir. 1996); *Brock v. U.S.*, 64 F.3d 1421, 1425 (9th Cir. 1995). These claims survive. No dispute appears to exist that Azure's remaining claims against the Government for negligence and emotional distress arise directly from assault and battery. This direct connection would defeat any waiver of sovereign immunity under § 2680(h) absent an exception.

Section 2680(h) creates an exception for certain types of intentional torts. This exception means that "liability is restored" to the Government "with regard to acts or omissions of *investigative or law enforcement officers of the United States Government*." *Tekle v. U.S.*, 511 F.3d 839, 851 n.9 (9th Cir. 2007) (emphasis added); 28 U.S.C. § 2680(h). As a result, the [FTCA] shall apply to any claim arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." 28 U.S.C. § 2680(h). The statute defines "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.*

The critical question remains whether Cook falls into the definition of federal "investigative or law enforcement officer" under § 2680(h). If so, Azure's claims against the Government for negligence, assault and battery, and emotional distress remain plausible if Cook qualifies as a federal officer. Tribal law enforcement officers associated with the BIA are not automatically "commissioned" as federal officers. 25 C.F.R. § 12.21(b). A court must determine the "commissioned" designation on a "case-by-case basis." *Id.*

The Government contends that Cook does not qualify as an "investigative or law enforcement officer" because Cook never had been issued a special law enforcement commission ("SLEC"). The Government asserts that the FTCA's federal investigative or law enforcement officer exception to the intentional tort exclusion generally "does not apply to tribal officers not in possession of an SLEC." *Gatling v. U.S.*, 2016 WL 147920, *3 (D. Ariz. Jan. 13, 2016) (citations omitted). Lenora Nioce ("Nioce"), a Special Agent for the Bureau of Indian Affairs in charge of issuing a SLEC, attests in a declaration that Cook never had been issued an SLEC as a correctional officer at Fort Peck Tribal Detention Center as of July 12, 2019. (Doc. 13-1 ¶ 3). Nioce has acknowledged that SLEC's are not issued to tribal correctional officers because they do not assist the BIA in enforcing federal laws. *Id.* at ¶¶ 1-2.

7

The Court notes that Ninth Circuit precedent does not require the specific issuance of a SLEC to tribal officers to assert liability against the Government under the FTCA. The Ninth Circuit examined in *Shirk v. U.S. ex rel. Dept. of Interior*, 773 F.3d 999 (9th Cir. 2014), whether the Government stood liable under the FTCA for the actions of two tribal police officers. In *Shirk*, two tribal police officers were traveling home in a tribal police cruiser when they observed a vehicle driving erratically. *Id.* at 1001. The officers followed the vehicle and eventually came to a stop behind the vehicle at a red light. *Id.* One officer exited the cruiser and approached vehicle. *Id.* The driver of the vehicle saw the officer approaching and accelerated through the intersection, colliding with a motorcyclist. *Id.* The motorcyclist suffered serious injuries and brought claims against the United States under the FTCA. *Id.* The motorcyclist alleged that the BIA employed the officers for purposes of the FTCA and, as a result, the Government remained liable for their actions. *Id.* The Government moved to dismiss the complaint for lack of subject matter jurisdiction. *Id.*

The Ninth Circuit laid out a two-step test to determine whether the actions of tribal employees exist as part of the BIA for purposes of waiving sovereign immunity to claims brought against the Government under the FTCA. *Id.* at 1006. A court must first determine "whether the alleged activity is, in fact, encompassed by the relevant federal contract or agreement." *Id.* A court then must decide

8

"whether the allegedly tortious action falls within the scope of the tortfeasor's employment under state law." *Id.* The Ninth Circuit noted that the scope of the relevant contract or agreement defines the relevant "employment" for purposes of step two's scope of employment analysis. *Id.* The Ninth Circuit specified that plaintiffs must satisfy both prongs to establish proper subject matter jurisdiction. *Id.* The Ninth Circuit remanded the case back to the district court with orders to apply the two-step test. *Id.* at 1008.

The tribal officers in *Shirk* had been employed by the Indian community that operated under a contract to provide law enforcement services to the reservation pursuant to the Indian Self-Determination and Education Assistance Act of 1975 (ISDEAA). *Id.* at 1002. These contracts, commonly referred to as "638 contracts," refer to the public law number of the ISDEAA. *See* Indian Self-Determination and Education Assistance Act, Pub. L. 93-638, 88 Stat. 2203 (Jan 4, 1975). A 638 contract stems from a tribe operating a program previously serviced by the BIA as a contractor with the money that the BIA otherwise would have spent on the program. *Shirk*, 773 F.3d at 1003, (*citing Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*, 729 F.3d 1025, 1033 (9th Cir.2013)).

It remains unclear what kind of 638 contract, if any, exists in this case. Without such an agreement at the Court's disposal, no way exists of knowing whether the conduct of the officers falls within the bounds of the agreement of a

638 contract. The Court similarly cannot analyze the second prong in the *Shirk* test without access to such a contract. The Complaint alleges that the officers acted within the course and scope of their employment when engaging in contact with Azure. (Doc. 20 at ¶¶ 32, 33, 34, 43). The Court cannot evaluate fully the definition of such "employment," however, without review of the relevant 638 contract. *Shirk*, 773 F.3d at 1006.

The parties have yet to produce other details that could assist this Court in its determination of whether Cook qualified as investigative or law enforcement officers of the United States Government under § 2680(h). Azure alleges that she filed a complaint with the BIA following the incident. (Doc. 20 at ¶ 30). The BIA recommended disciplinary action for Cook after the BIA Office of Justice Services-Internal Affairs Division's internal investigation on the matter. *Id.* at ¶ 31. Regarding employment issues, the Second Amended Complaint indicates that the BIA maintains authority in its relationship with the Fort Peck Tribal Detention Center. (Doc. 20 at ¶¶ 30, 31). The extent of such control or relationship remains unclear. Similarly, it remains unknown if Cook maintains status as a tribal member or the status of Cook's employment at the Fort Peck Tribal Detention Center at the time of the incident.

Allowing the parties to engage in discovery will uncover details that will prove crucial to a determination from this Court. Any disposition made at this

stage absent documents relating to Cook's employment history, employment status, employment conduct, along with a copy of the BIA's investigation and any relevant 638 contract would be premature. Once discovery has taken place, the parties may reassert their arguments on summary judgment. Counts 4, 5, and 6 survive the Government's Motion to Dismiss the Second Amended Complaint (Doc. 24).

## ORDER

Accordingly, **IT IS ORDERED** that the Government's Motion to Dismiss Second Amended Complaint (Doc. 24) is **GRANTED in part**, and **DENIED in part**.

1. Counts 1, 2, and 3 against the United States are **DISMISSED**.

Dated the 15th day of June, 2022.

_____
Brian Morris, Chief District Judge
United States District Court